IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MASTER WOODCRAFT CABINETRY, LLC, MCW INDUSTRIES, LLC, | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION NO.  2:22-CV-00098-JRG |
| HERNANDEZ CONSULTING, INC., HERNANDEZ CONSULTING & CONSTRUCTION, | § § § | |
| *Defendants*. | § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Hernandez Consulting, Inc. and Hernandez Consulting Construction's (collectively, "Hernandez") Motion to Dismiss or Transfer for *Forum Non Conveniens* (the "Motion"). (Dkt. No. 14). In the same, Hernandez moves to dismiss the claims brought by Plaintiffs Master Woodcraft Cabinetry, LLC ("Cabinetry") and MCW Industries, LLC ("MCW") (collectively, "Master Woodcraft") based on forum selections clauses that, according to Hernandez, make Louisiana the proper forum. Having considered the Motion and subsequent briefing, the Court finds the Motion should be **DENIED** for the reasons set forth herein.

## I.      BACKGROUND

Master Woodcraft maintains its principal place of business in Harrison County, Texas. (Dkt. No. 2). Hernandez's principal place of business is located in New Orleans, Louisiana. (Dkt. No. 14–1 at 2). Master Woodcraft manufactures cabinetry and provides labor for the installation of the same. (*Id*.). Hernandez is a general contractor. (*Id*.).

1

Hernandez contacted Master Woodcraft about the purchase and installation of cabinets for a construction project located at 1315 Gravier St., New Orleans, Louisiana (the "Project"). (*Id*.). Thereafter, Master Woodcraft forwarded a Credit Application to Hernandez (the "Credit Application"). (Dkt. No. 18 at 4). Hernandez's principal signed and dated the Credit Application on August 6, 2020. (Dkt. No. 18–3). In the section thereof titled, "Agreement," Master Woodcraft and Hernandez agreed to following terms related to the choice of law and forum of any disputes:

> In consideration of the extension of credit to the [Defendants, i.e. the] Purchaser by MWCC/MCW Ind., if credit is extended, Purchaser agrees that this transaction is consumed in Harrison County, Texas and agrees that jurisdiction and venue for any suit arising out of any relationship between Purchaser and MWCC/MCW Ind. under any theory of law or any cause of action shall be only in the appropriate County or State Court in Harrison County, Texas and Purchaser expressly agrees and consents to jurisdiction and venue in said State and County.  In further consideration of the extension of credit by Seller to Purchaser, the Purchaser expressly agrees that no removal to any United States District Court or transfer of venue (Federal or State) shall ever be sought by Purchaser and Purchaser hereby waives any objection to in personam jurisdiction and venue and agrees to make no request to transfer any suit to any other Court, other than the appropriate County or State Court in Harrison County, Texas. (*Id*.).

On August 5, 2020, Master Woodcraft sent a quote to Hernandez for the manufacture of the cabinets (the "Quote"). (Dkt. No. 18 at 4). The Quote is signed by Cabinetry, but not Hernandez. The Quote includes a choice of law and forum selection clause:

> This Agreement and all rights and obligations hereunder shall be governed by the laws of the State of Texas, with venue and jurisdiction in the appropriate County or State Court in Harrison County, Texas. Purchaser hereby submits and agrees to in personam jurisdiction in the appropriate County or State Court in Harrison County, Texas and agrees that any attempted removal to United States District Court is hereby waived as well as any transfer to any other court or venue. (Dkt. No. 18–4).

The Quote also contains a merger clause precluding amendments to the terms of the Quote absent a written agreement signed by Cabinetry's authorized representative:

> Master WoodCraft Cabinetry, LLC (the "Seller") agrees to sell the goods covered herein (the "Goods") to Purchaser on the following terms and conditions of sale

(the "Terms and Conditions") which supersede any other inconsistent terms of Purchaser; this contract constitutes the entire agreement between the parties with respect to the Goods and this Agreement may not be modified; amended or waived in any way except in writing signed by an authorized representative of Seller. (*Id*.).

Thereafter, Hernandez forwarded a Subcontract, dated August 6, 2020, to Master Woodcraft related to the installation of the cabinets (the "Subcontract"). (Dkt. No. 18 at 4). The Subcontract, executed by Hernandez Consulting Inc. and MCW, contains a forum selection and choice of law provision:

> This Subcontract shall be governed, construed and interpreted in accordance with the laws of the State of Louisiana without regard to its conflict of law principles, except as to any provisions governed by the laws and regulations of the United States, as to which provisions the applicable laws and regulations of the United States shall govern. Subcontractor and Contractor expressly submit to the exclusive venue and exclusive jurisdiction of Orleans Parish Civil District Court, Parish of Orleans, State of Louisiana for any claim, dispute or lawsuit arising under or in any way related to this Subcontract or the performance thereof. (Dkt. No. 18–5).

The Subcontract includes a definition of "Contract Documents," which include "Solicitation Documents":

> The term "Contract Documents," as used herein, refers to the Relevant Solicitation Documents, General and Special Provisions of the Prime Contract, Drawings, Specifications, Addenda, Amendments, Modifications Related to the Prime Contract and the Solicitation, and all other Documents including, Work Order or Task Order proposals and task orders forming a part of the Prime Contract between the Contractor and the Owner or relevant thereto, as listed in Exhibit A and Exhibit B. Further, Subcontractor agrees that the Contract Documents shall be deemed to be incorporated herein by reference and made a part hereof and that in the event of a conflict between this Subcontract and the Contract Documents, the terms of this Subcontract shall prevail. (*Id*.).

It also contains a merger clause:

> This writing, together with the documents expressly incorporated by reference herein, comprises the full and entire agreement between the Parties for the Work provided for herein. No other agreements or understanding of any nature concerning the same has been entered into or will be recognized. No oral modification of this Subcontract shall have any force or affect. (*Id.*).

When MCW executed the Subcontract on December 4, 2020, it attached an addendum which, according to Master Woodcraft, incorporates the Quote and Credit Application into the Subcontract: "MCW Industries, LLC's Credit application, and quote become an integral part of this agreement and take precedence over all other contract documents." (the "Addendum"). (*Id.*). When MCW returned the executed Subcontract, it included a stamp below the signature block flagging the addition of the Addendum ("Stamp"). Hernandez Consulting Inc. executed the Subcontract on December 7, 2020:



(*Id.*).

On the same day MCW signed the Subcontract, Master Woodcraft executed Hernandez's form Purchase Order, which set form the terms related to the goods ordered by Hernandez from Master Woodcraft (the "Purchase Order"). (Dkt. No. 18–6). The Purchase Order contains a choice-of-law clause and forum selection clause. (*Id.*). While the Subcontract selects the Orleans Parish Civil District Court as the exclusive forum for disputes between the parties, the Purchase Order is broader:

> All matters arising out of or relating to this Order shall be governed by and construed in accordance with the laws of the State of Louisiana without giving effect to any choice or conflict of law rule that would cause the application of the laws of any other jurisdiction. Any legal suit, action or proceeding arising out of or

relating to this Order shall be instituted in the federal courts of the United States of America or the courts of the State of Louisiana, in each case located in the Parish of Orleans, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding. (*Id*.).

The Purchase Order also contains a merger clause:

This Order constitutes the sole and entire agreement of the parties with respect to Buyer' s purchase order, and supersedes all prior or contemporaneous understandings, agreements, negotiations, representations and warranties, and communications, both written and oral, with respect to the subject matter hereof. Seller's acceptance is expressly limited to the terms of this Order. The terms and conditions of this Order prevail over any terms or conditions contained in any other documentation and expressly exclude any of Seller's general terms and conditions of sale or any other document issued by Seller in connection with this Order. If this Order has been issued by Buyer in response to an offer, the terms of which are additional to or different from any of the provisions hereof, then the issuance of this Order by Buyer is subject to the express condition that Seller assent that this Order constitutes the entire agreement between Buyer and Seller with respect to the subject matter hereof and thereof. (*Id*)

As with the Subcontract, Master Woodcraft added the Stamp and attached the Addendum to the Purchase Order and executed on December 4, 2020. (*Id*). Hernandez's signature followed on December 7, 2020. (*Id*).

Master Woodcraft filed this lawsuit alleging that Hernandez failed to compensate Master Woodcraft, "in accordance with the contracts entered with [Master Woodcraft]." (Dkt. No. 2). After this suit was filed, Hernandez filed suit against Master Woodcraft in the Civil District Court for the Parish of Orleans, Louisiana. (Dkt. 14–1 at 3). Hernandez's Motion seeks the dismissal of Master Woodcraft's claims on the grounds that forum selection clauses in the Subcontract and Work Order require dismissal of the suit. (*Id*. at 1). Alternatively, Hernandez seeks a transfer to the Eastern District of Louisiana pursuant to 28 U.S.C. 1404(a). (*Id*. at 18).

## II.    LEGAL STANDARD

A federal court sitting in diversity applies the doctrine of forum *non conveniens* in deciding a motion to dismiss in favor of a foreign forum. *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785,

793 (5th Cir. 2007). "The forum *non conveniens* determination is committed to the sound discretion of the trial court." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981). The doctrine of forum *non conveniens* arises from the premise that in certain cases federal courts can relinquish their jurisdiction in favor of another forum. *Quackenbush v. Allstate Ins. Co*., 517 U.S. 706, 722 (1996). Under this doctrine, the moving party bears the burden of showing that an alternative forum is available. *Piper Aircraft*, 454 U.S. at 254. In analyzing the doctrine of forum *non conveniens*, "the court must determine whether there exists an alternative forum." *Id*. "The court considers the amenability of the defendant to service of process and availability of an adequate remedy in the alternative forum." *DTEX*, 508 F.3d at 794 (citing *id*. at 254–55).

The court then must determine which forum is best suited to adjudicate the matter by applying a series of "public" and "private" factors. *Piper Aircraft*, 454 U.S. at 252; *McLennan v. Am. Eurocopter Corp*., 245 F.3d 403, 424 (5th Cir. 2001). The "private" interest factors include: (i) the relative ease of access to sources of proof; (ii) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (iii) possibility of view of the premises, if view would be appropriate to the action; (iv) all other practical problems that make trial of a case easy, expeditious and inexpensive. *DTEX*, 508 F.3d at 794 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). The "public" interest factors include: (i) the administrative difficulties flowing from court congestion; (ii) the local interest in having localized controversies resolved at home; (iii) the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; (iv) the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and (v) the unfairness of burdening citizens in an unrelated forum with jury duty. *Id*. (citing *Dickson Marine, Inc. v. Panalpina, Inc*., 179 F.3d 331, 342 (5th

Cir. 1999).) The movant carries the burden of persuading the court that a lawsuit should be dismissed on forum *non conveniens* grounds. *Id*.

Ordinarily, a favorable presumption is applied to the plaintiff's choice of forum. *Id*. at 795. However, "a forum-selection clause designating a forum different from that chosen by the non-movant eliminates the presumption in favor of the non-movant's choice of forum." *Compass Bank v. Williams*, No. 5:12-CV-186, 2015 WL 12803710, at *2 (S.D. Tex. Jan. 20, 2015). The presence of a valid forum-selection clause simplifies the forum *non conveniens* analysis in two ways: (1) the plaintiff's choice of forum merits no weight because, by contracting for a specific forum, the plaintiff has effectively exercised its venue privilege before a dispute arises; and (2) the private-interest factors "weigh entirely in favor of the preselected forum," so that the "district court may consider arguments about public-interest factors only." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63–64 (2013).

To support a claim for transfer under § 1404(a), a movant must demonstrate that the transferee venue is "clearly more convenient" than the current district by weighing the same public and private interest factors for the forum *non conveniens* analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). Absent such an elevated showing, plaintiff's choice of venue must be respected. *Id.* "When deciding a motion to transfer under § 1404(a), the Court may consider undisputed facts outside of the pleadings, such as affidavits or declarations, but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *Hammers v. Mayea-Chang*, No. 2:19-cv-181, 2019 WL 6728446, at *4 (E.D. Tex. Dec. 11, 2019).

## III.    DISCUSSION

### A.    The Quote and Credit Application Were Incorporated Into Subcontract and Purchase Order.

Hernandez argues the Louisiana forum selection clauses in the Purchase Order and Subcontract are valid and enforceable, thereby warranting either dismissal of this lawsuit or transfer to the Eastern District of Louisiana. (Dkt. No. 14–1). Master Woodcraft alleges the Texas forum selection clauses in the Quote and Credit Application were specifically incorporated into the Purchase Order and Subcontract, and therefore, take precedence. (Dkt. No. 18). The threshold issue before the Court is whether the Texas forum selection clauses in the Credit Application and Quote were incorporated into the Purchase Order and Subcontract.

When two or more instruments expressly refer to each other, as when one is incorporated by reference into the other, uniform construction is unavoidable. *Bob Montgomery Chevrolet v. Dent Zone*, 409 S.W.3d 181, 189 (Tex. App.—Dallas 2013, no pet.). No specific words are required to incorporate a document, as long as the signed document plainly refers to the other document. *Id*. However, plainly referring to a document requires more than merely mentioning it—the language in the signed document must show that the parties intended for the other document to become part of their agreement. *Id*. An unsigned document may be incorporated by reference into a signed document. *Texas Dep't of Pub. Safety v. Williams*, 303 S.W.3d 356, 358 (Tex. App.—El Paso 2009, no pet.).

Regarding the Subcontract, Hernandez argues that the addition of the Stamp and Addendum was done unilaterally. (Dkt. No. 19 at 10). Hernandez also argues that the incorporation language in the Stamp does not reflect an intent by the parties to incorporate the Addendum and that incorporation would directly conflict with the terms of the Subcontract, including the merger clause set forth therein. (*Id*.). Although the Court agrees that the terms of the Addendum and the

terms of the Subcontract conflict, this does not nullify the fact that Hernandez signed the Subcontract *after* the Stamp and Addendum were added by Master Woodcraft to the Subcontract. This is not a situation where Master Woodcraft unilaterally added the Stamp and Addendum after Hernandez had already executed the Subcontract. The law presumes that a party knows and accepts the terms of the contract he signs, and the law does not excuse a party's failure to read the contract when he had an opportunity to do so. *See Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 425 (Tex. 2015). Hernandez signed the Subcontract with the Stamp and Addendum. The Stamp clearly incorporates the Addendum, which states that the "Credit application, and quote become an integral part of this agreement and take precedence over all other contract documents." (Dkt. No. 18–5).  The Court finds that the Quote and Credit Application were incorporated into the Subcontract.

With respect to the Purchase Order, Hernandez argues that the Section 2.207 of the Texas Business and Commerce Code controls whether the Addendum was incorporated into the Purchase Order. (Dkt. No. 19 at 10). Hernandez contends that the Purchase Order expressly limited Master Woodcraft's acceptance to the terms set forth in the Purchase Order. (*Id*. at 11). Master Woodcraft responds that 2.207 does not bar the incorporation of the Addendum because Hernandez signed the Purchase Order *after* the stamp and Addendum were added to the Purchase Order. (Dkt. No. 20 at 5, 6). The Court agrees with Master Woodcraft. Section 2.207 is inapplicable as Hernandez accepted the terms of the Purchase Order which, at the time of signing, included the Addendum and Stamp. If Hernandez had been the first party to sign the Purchase Order, the circumstances may have warranted a different finding. The Court finds that the Quote and Credit Application were incorporated into the Purchase Order.

Finally, Hernandez argues that even if the Addendum was incorporated into the Subcontract, it does not clearly reference the Quote or Credit Application. (Dkt. No. 19 at 10). The Addendum provides, in pertinent part, that "MCW Industries, LLC's Credit Application, and quote become an integral part of this agreement and take precedence over all other contract documents." (Dkt. No. 18–5). The reference to the Quote and Credit Application manifests the parties' intent to include the Quote and Credit Application as part of the Subcontract. This meets the requirement for incorporation. *See Owens v. Hendricks*, 433 S.W.2d 164, 166, 167 (Tex. 1968). Accordingly, the Court finds that the Credit Application and Quote were incorporated into the Subcontract and Purchase Order such that the Subcontract and Purchase Order contain multiple, conflicting forum selection clauses.

### B.     Validity and Enforceability of the Forum Selection Clauses

The parties do not challenge the validity of the competing forum selection clauses. Instead, the parties argue that their respective agreements control the other. If a court determines that one party's terms definitively control over the other, then the court may enforce the terms of the forum selection clause without a consideration of other factors. *See A-76 Technologies, Inc. v. Mass Management, LLC*, 2021 WL 6202654 (S.D. Tex. Sept. 7, 2021). As discussed above, the applicable contracts contain multiple, conflicting forum selection clauses. The Court does not find that one forum selection clause controls the other. The forum selection and merger clauses in sections 18 and 26 of the Subcontract directly conflict with the forum selection clause and merger clause incorporated through the attached Addendum. Master Woodcraft argues that the terms of the Addendum prioritize the incorporated Credit Application and Quote over the terms of the Subcontract. However, the Addendum states that the Credit Application and Quote are incorporated into and are part of the Subcontract and that such document takes precedence over

"other contract documents." In other words, the Subcontract, including the incorporated terms from the Credit Application and Quote, is distinct from the other referenced "contract documents." Accordingly, the Court cannot construe one forum selection clause as controlling the other and, therefore, cannot dismiss or transfer the case based on the terms of the agreements.

## C.     Traditional 28 U.S.C. 1404(a) Analysis

In the absence of a controlling forum selection clause, the Court conducts an analysis of Hernandez's transfer request as if brought under 28 U.S.C. 1404(a). At least one other court opted to conduct a 1404(a) analysis when the court found the competing forum selection clauses equally valid and binding on the litigation. *American Greetings, Corp. et al. v. Cookie Jar Entertainment, Inc. et al.*, No. 1:09-cv-1056, 2009 WL 3713686, at *7, (N.D. Ohio Nov. 3, 2009). In evaluating a motion to transfer pursuant to § 1404(a), the Court considers the Fifth Circuit's non-exhaustive list of private and public interest factors. *In re Volkswagen of America, Inc.,* 545 F.3d 304, 312 (5th Cir. 2008). The Court finds that Defendants have not shown that the E.D. La. is clearly more convenient when considering the private and public interest factors.

### i.     *Private Interest Factors*

In light of their reliance on the forum selection clauses, the parties' briefing does not address the application of the private interest factors. However, based on the record before it, the Court finds that the private interest factors do not weigh in favor of a transfer. This dispute involves witnesses and sources of proof related to work performed in Marshall, Texas for a project located in New Orleans, Louisiana. The record before the Court does not show that the ease and access to proof, as well as the cost of attendance, favor one forum over the other. The Court is not aware of any practical problems that are specific to this case that would make the trial more easy, expeditious, and inexpensive in one forum over the other. These are burdens which fall upon

11

Hernandez, not Master Woodcraft.  Accordingly, the private interest factors do not weigh in favor of a transfer.

*ii.*      *Public Interest Factors*

(1) <u>The Administrative Difficulties Flowing from Court Congestion</u>

Hernandez argues that this factor weighs in favor of transfer because the administrative burden on the Louisiana State Court where Hernandez's suit against Master Woodcraft is pending is less than the "burden on this Court." (Dkt. No. 14–1). However, Hernandez asks the Court to transfer the case to the Eastern District of Louisiana, not the Louisiana State Court.[1] (*Id*. at 22). Hernandez provides no comparison or argument concerning why administrative difficulties flowing from "court congestion" clearly favors transfer to the Eastern District of Louisiana. In contrast, this case is set for trial in this Court later this year, and the Court is unaware of any burdens to its schedule that would impact its ability to oversee and adjudicate this dispute. The Court finds that this factor weighs against transfer.

(2) <u>The Local Interest in Having Localized Interests Decided at Home</u>

Hernandez contends Louisiana has the greatest interest in having this matter resolved in Louisiana. The services and material provided by Master Woodcraft were prepared and installed for a construction project in Louisiana. (*Id*. at 16). Hernandez further argues that Louisiana has enacted a statute prohibiting such disputes from being adjudicated outside of Louisiana. See LA. R.S. 9:2779 (*Id*. at 17).

Master Woodcraft responds that the majority of the work performed by Master Woodcraft took place in Texas and that payment to Master Woodcraft, which is the basis for the lawsuit, was to be

---

[1] Even if this were Hernandez's request, 28 USC 1404(a) does not permit the Court to transfer the case to a state court.

12

performed in Texas. (Dkt. No. 18 at 18). Regarding the Louisiana statute cited by Hernandez, Master Woodcraft argues that it is inapplicable because Texas law applies.

Although the Court agrees with Hernandez that Louisiana law applies, the Court does not find that Hernandez has clearly demonstrated that this factor favors a transfer. The dispute before the Court concerns Master Woodcraft's allegation that Hernandez breached the applicable agreements when it failed to pay Master Woodcraft in accordance with the contracts. The Credit Application, incorporated into the Subcontract and Purchase Order, requires payments be made in Harrison County, Texas. (Dkt. No. 18–5). Thus, the crux of this dispute focuses on allegations made by a Marshall, Texas company that it did not receive payment, due in Marshall, Texas, for work performed, in large part, in Marshall, Texas. Thus, the Court finds that although the construction project that is in dispute was located in New Orleans, Louisiana, Marshall, Texas has (at least) an equal interest in the adjudication of this dispute. This factor is, at most, neutral.

### (3) The Familiarity of the Forum with the Law that Will Govern the Case

As with the forum selection clauses, the parties dispute the enforcement of the choice of law clauses contained within the agreements. As a result of the incorporation of the Quote and Credit Application into the Subcontract and Purchase Order, the latter documents contain competing choice of law clauses. Master Woodcraft argues the Texas choice of law clause controls because the "full and entire agreement provisions of the Subcontract and Purchase Order were therefor [sp] negated by the Addendum which became the last agreement of the parties on the issue of choice of law and forum selection." (Dkt. No. 18 at 8). Hernandez argues, as discussed above, against incorporation and, in the alternative, that Louisiana law controls under the Restatement (Second) Conflicts of Laws § 188. (Dkt. No. 19 at 3–8).

As with the forum selection clauses, the Court finds that the incorporation of the Quote and Credit Agreement into the Subcontract and Purchase Agreement resulted in multiple, competing

13

choice of law clauses in the same agreement. The Court disagrees with Master Woodcraft that the Addendum was executed later and, therefore, supersedes the terms of the Subcontract and Purchase Order. The Purchase Order and the Subcontract were signed by Hernandez as single documents with the Stamp and Addendum incorporated. In other words, Hernandez did not sign the Subcontract and then sign an entirely different agreement with competing terms. The incorporation of the Credit Application and Quote into the Subcontract means the parties agreed to multiple, conflicting choice of law provisions. The Court finds that Section 187 of the Restatement (Second) does not apply given the conflicting choice of law provisions.

In the absence of a clear choice of law provision, the Court conducts a choice of law analysis pursuant to Section 188 of the Restatement (Second).  Section 188 considers the following contacts in determining the law applicable to a particular issue: the place of contracting, the place of negotiation of the contract, the place of performance, the location of the subject matter of the contract, and the domicil, residence, nationality, place of incorporation and place of business of the parties. A review of these factors warrants a finding that Louisiana law applies to this dispute.

The Court finds the third consideration, the place of performance, to be dispositive. It is undisputed that Master Woodcraft provided services and materials to Hernandez.  As a contract for the performance of services, the law of the state where performance was required governs the Subcontract. See Restatement (Second) Conflict of Laws §196; *DeSantis v. Wackenhut Corp*., 793 S.W.2d 679, n.4 (Tex. 1990). Further, contracts for the sale of an interest in chattel are governed by the law of the state where the seller is to deliver the chattel. *See* Restatement (Second) Conflicts of Laws §191. It is undisputed that Master Woodcraft delivered the cabinets to Louisiana. Accordingly, this contact favors the application of Louisiana law. The remaining considerations

are neutral. Thus, the Court finds that Louisiana law applies to this dispute and, therefore, this public interest factors weighs in favor of a transfer to Louisiana.

### (4) The Avoidance of Unnecessary Problems of Conflicts of Law

Having held that Louisiana law applies to this dispute, the Court does not foresee unnecessary problems relating to conflicts of law.

### (5) The Unfairness of Burdening Citizens in an Unrelated Forum

The Court does not find that its decision will result in an unfair burden to citizens of either Texas or Louisiana. As discussed herein, each state has an interest in this dispute. Hernandez argues this factor is neutral because the parties waived their right to a jury trial in the contracts. (Dkt. No 14-1 at 17). Whether or not the parties agreed to waive their rights to a jury is not before the Court. Regardless, the Court does not find this factor overwhelmingly favors transfer to Louisiana.

## IV.   CONCLUSION

The Court finds that the only factor that weighs in favor of transfer is the familiarity of the forum with the law governing the case. All of the other factors either weigh against transfer or are neutral. The Court finds that Defendants have not met their burden to show that Eastern District of Louisiana is clearly more convenient, and that the Motion should be **DENIED**.

**So ORDERED and SIGNED this 25th day of January, 2023.**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE